GAUCHE<br>*v.*<br>TRAUTMAN.

the judgment in favor of *Gauche*, which being satisfied, leaves but the sum of $286 42 in the sheriff's hands, as the subject matter of controversy between the appellant and appellee. It is clear, we have no jurisdiction of the controversy. Neither party having appealed, as to the judgment in favor of *Gauche*, nor he against them.

*Gauche* has attempted, in this court, to join in the appeal, and claims a reversal of the judgment. It is reserved to appellees alone, to join in the appeal taken against them. We are unable, therefore, to consider *Gauche* a party to the appeal, or to afford him the relief he claims.

Had *Gauche* appealed, or had either party appealed, as to him the case would have been similar to that of *Colt* v. *O'Callaghan*, 2d Ann. 189. But, as the case is before us, it falls within the decision in the case of *The Second Municipality* v. *Corning & Co.*, 4th Ann. 407. The amount in the sheriff's hands, about which the parties in this court contend, is less than three hundred dollars.

The appeal is dismissed, at the costs of the appellant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## THE MILNE ASYLUM *v.* THE FEMALE ORPHAN SOCIETY et al.

The testator had willed his property to two existing benevolent societies, and to found two others, one-fourth to each. Thirty thousand dollars had been set apart by the court of probates, to erect buildings, &c., for the two contemplated institutions. *Held:* That this amount should be deducted from the share of the said two institutions, as universal legatees, and that they were not entitled to that sum, over and above their shares, as universal legatees.

An account of executors, duly homologated, is *res judicata* between the executors and legatees, but is not so as to the legatees *inter se*.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *F. Buisson*, for plaintiff. *Elmore* and *King*, and *G. B. Duncan*, for defendants. The judgment of the court *(Eustis*, C. J., absent,) was pronounced by

ROST, J. The will of the late *Alexander Milne*, contains the following dispositions : " It is my positive will and intention, that an asylum for destitute orphan boys, and another asylum for the relief of destitute orphan girls, shall be established at Milneburg, in this parish, and that my executors shall cause the same to be duly incorporated ; and to the said two contemplated institutions, and to the present institution of the society for the relief of destitute orphan boys, and to the Poydras female asylum, I give and bequeath, in equal shares or interest of one-fourth each, all my lands on the Bayou St. John, and on the Lake Pontchartrain, including the unsold lands of Milneburg. I institute for my universal heirs and legatees, in equal shares or portions, the said four institutions, to whom I give and bequeath the residue of all the property and estate, movable and immovable, I may possess at the time of my decease, to be equally divided and apportioned among them."

The two asylums ordered to be established by the will, were incorporated by the Legislature, after the death of the testator; and the two others, named in this disposition, entered into a notarial agreement with them, by which they renounced the right which they had, to contest their capacity to take under the will, on the ground that they were not in existence at the date of the will, or the death

of the testator, and admitted them as joint universal legatees, in equal shares with themselves. The succession has since been administered, and in the division of the assets, the Milne Asylums have each received the sum of $1,115 26, more than their co-legatees.

The Milne Asylum for destitute orphan boys, now sues the Society for the relief of destitute orphan boys and the Poydras Asylum, alleging its right to receive from the succession of *Milne*, $15,000 over and above its share, as universal legatee, and claims from them, jointly, the difference between that sum and $1,115 26, already received on account.

The defendants deny the plaintiff's demand, and claim, in reconvention, $1,115 26. The district judge rejected it, and allowed the claim in reconvention. The Milne Asylum has appealed.

The appellant basis its right to recover, on a judgment rendered in 1840, on a rule taken by the executors upon the four universal legatees and the attorney of absent heirs, to show cause why $100,000 of the funds of the succession should not be appropriated for building, establishing and furnishing the two Milne Asylums, then lately incorporated by the Legislature. This decree is as follows :

" The court being of opinion, that it was the intention of the testator, that the Milne Asylums should be established out of the funds of the estate ; and considering, by the agreement entered into by the parties, that the sum of $30,000 would be but a reasonable sum to be appropriated for the building, establishing and furnishing the Milne Asylums, for the relief of destitute orphan boys and orphan girls, do now order, adjudge and decree, that the dative executor of the estate do appropriate and set apart for the above purposes, the said sum of $30,000, to be distributed in the manner which the said asylums may deem fit."

The agreement referred to in this decree, was, that the executor might set apart two sums of $15,000 each, for the purpose of establishing the two Milne Asylums ; the representatives of these asylums stating, in the agreement, that they claimed these sums, independently of their rights, as universal legatees, on a supposed intention of the testator to that effect ; the defendants, on the contrary, resisting any interpretation of the will, under which they would receive less than one-fourth of the estate, and reserving to themselves the right to appeal from the judgment about to be rendered on the agreement. They did not appeal, and the plaintiff's counsel contends that the judgment is now final, and that it is conclusive as to the right of the Milne Asylums, to receive over and above their share, the sum acknowledged by the defendants to be reasonable to defray the expenses of the establishments, which, in the opinion of the district judge, the testator intended they should have.

We do not so understand the decree. The judge does not expressly say, that the $30,000 set apart by him, are to be paid over to the Milne Asylums, beyond their shares as universal legatees. We think, with him, that as the testator asked nothing for those asylums from the Legislature, except the acts of incorpotion, he must have intended, that when incorporated, they should be established out of the estate, and that a sum of money sufficient for that purpose, should at once be appropriated to it, without waiting for the final settlement of the succession. But we are equally well satisfied, that the will is susceptible of but one interpretation, and that the cost of establishing them, must be imputed to their share as universal legatees. The judgment will bear that construction fully as well as the other, and as it best accords with the facts and the law, as well as the equity of the case, we feel bound to adopt it.

It is next urged, that the executor, in the rendition of his final accounts, expressly stated the right of the plaintiffs to an extra part of $15,000, and proposed to distribute some assets remaining in his hands, in conformity thereto ; that the defendants assented to the distribution, and made it binding upon themselves, by approving the account and discharging the executor.

It is true, that *Mrs. Elizabeth Clement* and *Mr. Beverly Chew*, each representing one of the defendants, went before a notary, and took upon themselves to declare, that the principles according to which the tableau of the executor had been made out, (having reference to the judgment rendered in 1840,) were *res judicata* between the parties, and entitled the Milne Asylums to receive $30,000 beyond their share, as universal legatees. But the legal opinions of old ladies, are not yet held to be precedents in courts of justice ; and as the declaration was made in error, it ought not to prejudice the rights of the defendants.

The object of the executor, in filing his account, was to obtain his discharge, not to settle the accounts of the legatees *inter se.* The consent of the latter, that the account should be homologated, as presented, is binding between them and the executor ; but it is not easily perceived, how it could be *res judicata* between the legatees. It is, however, unnecessary to decide that question, because the plaintiff's action involves a renunciation of that plea. If the judgment of homologation was conclusive as to all matters in the account, the payments mentioned therein, as having been made by the executor to the defendants, could not be recalled ; and as the plaintiff has expressly agreed to warrant to them their allotted shares of the real estate, its action must necessarily fail.

. Considering, that under that state of facts, the plaintiff could not avail itself of the plea of *res judicata*, if that plea was otherwise well founded, and that the questions at issue were open for adjudication in the district court, we are of opinion that justice has been done between the parties, and that the judgment should be affirmed.

The judgment is therefore affirmed, with costs.